**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

GARY GILLARD,

                               Plaintiff,

         v.                                      No. 12-CV-83
                                                       (LEK/CFH)

MICHAEL ROVELLI, Correctional Officer, Great Meadow
Correctional Facility; THOMAS LAFOUNTAIN, Correctional
Officer, Great Meadow Correctional Facility; CURTIS
POIRIER, Correctional Officer, Great Meadow Correctional
Facility; TOM LYNCH, Correctional Officer, Great Meadow
Correctional Facility; GARY LIPHA, Correctional Officer,
Great Meadow Correctional Facility; ANDREW ROSE,
Correctional Officer, Great Meadow Correctional Facility;
DARIN WILLIAMS, Correctional Sergeant, Great Meadow
Correctional Facility; KEITH HENDRY, Correctional
Sergeant, Great Meadow Correctional Facility; NICHOLAS
DELUCA, Correctional Sergeant, Great Meadow
Correctional Facility; PETER BESSON, Correctional
Lieutenant, Great Meadow Correctional Facility; PAUL
ZARNETSKI, Correctional Lieutenant, Great Meadow
Correctional Facility; CHARLES F. KELLY, Deputy
Superintendent of Security, Great Meadow Correctional
Facility; GARY RAMEY, Industrial Supervisor, Great
Meadow Correctional Facility; DAVID ROCK,
Superintendent, Great Meadow Correctional Facility;
JOSE NUNEZ, Inmate: DIN # 98-A-6830, NOW AT
SING SING C.F., previously housed at Great Meadow
Correctional Facility,

                               Defendants.

_____

**APPEARANCES:**                       **OF COUNSEL:**

GARY GILLARD
Plaintiff Pro Se
01-A-1613
Attica Correctional Facility
Box 149
Attica, NY 14011

HON. ERIC T. SCHNEIDERMAN                    RICHARD LOMBARDO, ESQ.
Attorney General for the                            Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Gary Gillard ("Gillard"), an inmate currently in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, fourteen current and retired DOCCS employees and one inmate, violated his constitutional rights under the First, Eighth, and Fourteenth Amendments.  Compl. (Dkt. No. 1).  Presently pending is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on behalf of all defendants except for defendant Nunez.[2]  Dkt. No. 41.  Defendants also move for a protective order pursuant to Fed. R. Civ. P. 26(c)(1).  Gillard opposes this motion.  Gillard Resp. (Dkt. No. 50).  For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

---

[1]  This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2]  By letter motion dated June 7, 2013, defendants' counsel requested that defendant Deluca be permitted to join in the motion to dismiss.  Dkt. No. 79.  By decision and order dated July 10, 2013, the Honorable Lawrence E. Kahn granted that motion for joinder.  Dkt. No. 83.  Deluca was served on April 29, 2013.  Dkt. No. 75.  Given the Court's decision and order, as well as service of summons and complaint on Deluca, Gillard's objections as to the Office of the Attorney General's representation of Deluca in this action are effectively negated.  Gillard Resp. (Dkt. No. 50) at 2.

# I. Background

The facts are related herein in the light most favorable to Gillard as the non-moving party.  See subsection II(A) infra.  At all relevant times, Gillard was confined at the Great Meadow Correctional Facility ("Great Meadow").  Compl. ¶ 4.

On January 23, 2009, at approximately 7:00 p.m., defendant Williams, a sergeant, approached Gillard with an inmate-authored note dated January 22, 2009 and asked Gillard whether he wanted to be placed in protective custody.  Compl. ¶ 21.  Because of the nature of Gillard's criminal history,[3] the inmate wrote the note requesting that Gillard be transferred out of Great Meadow.  Id. ¶ 20.  Gillard advised Williams that the correctional staff issued that note, not an inmate, in retaliation for Gillard lodging complaints against the staff.  Id. ¶ 21.  Despite Gillard's explanation, on January 25, 2009, Williams recommended Gillard for Involuntary Protective Custody ("IPC"), stating that

> Gillard's verbal statement that inmates wanted to hurt him
> because of his criminal history and anonymous[ly] written note
> threatening to kill Gillard are the reasons for this
> recommendation.  Also because of this inmate[']s litigious nature
> and his statement that it is my responsibility to put him in [IPC]
> for the safety of his person and this facility.

Id. ¶ 22.

On January 28, 2009, the IPC hearing commenced but it was adjourned because Williams was unavailable for the hearing.  Compl. ¶ 23.  On February 4, 2009, defendant Lynch, a corrections officer, escorted Gillard to the courthouse for the hearing.  Id. ¶ 24.  Gillard was ordered to sit and wait because defendant Hearing Officer and Supervisor

---

[3]  Based on the allegations contained in the complaint, it appears that Gillard was accused of committing sexual assault on a nine-year-old girl.  Compl. ¶¶ 20, 35.

Ramey was absent at the time.  Id. ¶ 25.  Lynch entered an unidentified room along with

other unidentified officers, leaving Gillard alone.  Id. ¶ 26.  Defendant Lieutenant Besson

approached and advised Gillard that Gillard was to blame for the ongoing issues.  Id. ¶ 27.

Besson proceeded to walk into the room with defendants Lynch, Lipha, Rose, all correction

officers, and other unidentified individuals.  Id.

    At this point, Lipha left the room.  Compl. ¶ 28.  Besson followed, taking another inmate

into the hearing room and left Gillard alone.  Id. ¶ 29.  Lipha returned with defendant Inmate

Nunez and ordered Nunez to sit next to Gillard as Lipha walked into the room with Lynch

and other unidentified individuals.  Id. ¶ 30.  Gillard could see in the room that Rose and

Besson were conducting a hearing.  Id.

    While Gillard was sitting with his hands in his pockets, watching Rose and Besson,

Nunez grabbed Gillard's right tricep with his left hand, cut Gillard's neck, and pushed Gillard

off balance.  Compl. ¶ 31.  Nunez proceeded to run to the center of the room, used his back

to block the views of Rose and Besson, and held out a weapon.[4]  Id.  Gillard yelled, staff

personnel exited from different rooms, and Nunez surrendered his weapon to unidentified

persons.  Id.  Gillard refrained from hitting or swinging at Nunez, complied with all staff

orders, and was handcuffed and transported for medical review.  Id.  Gillard contends that

defendant Rovelli, a corrections officer, ordered Nunez to murder Gillard.  Id. at 14.

    On February 5, 2009, a false misbehavior report was issued against Gillard, stating that

Besson witnessed Gillard punching Nunez in the head.  Compl. ¶ 33.  Gillard also alleged

that the misbehavior report "confirmed this was a sanctioned hit and setup and conspiracy

---

    [4] In his response to defendants' motion, Gillard characterized the weapon as a
"can top."  Gillard Resp. at 1.

on behalf of Michael Rovelli and all named defendants played parts by filing false . . .
reports against [Gillard] in retaliation and revenge to all the grievances that have been filed."
Id.  At some point, Rovelli came to Gillard's cell to threaten him.[5]  Id. ¶ 34.  On the same
day, at approximately 9:45 a.m., Gillard was ordered to pack and leave his cell.  Id. ¶ 35.
When Gillard reached the lobby area, Rovelli was standing with unidentified individuals and
told Gillard, "Gary, it's not over yet . . . ."  Id.  Gillard did not respond.  Id.  Gillard filed a
grievance against Rovelli, naming inmates as witnesses.  Id. ¶ 36.  The grievance was
denied.  Id.  Finally, at some point during the same day, Gillard was on his way to a visit
when Rovelli, who was standing in the hall area with unidentified officers and inmates,
called Gillard "a rat."  Id. ¶ 37.  All the unidentified officers and inmates turned to look at
Gillard.  Id.

On February 6, 2009, defendant Lafountain, a corrections officer, came to Gillard's cell
and told Gillard, "you['re] refusing the hearing right[s]."  Compl. ¶ 38.  Gillard replied that he
did not refuse his hearing rights and wanted to attend his hearing; however, Lafountain
walked away.  Id.  Non-party Inmate Johnson witnessed this exchange.  Id.  Shortly

---

[5]  To the extent Gillard attempted to allege a potential Eighth Amendment claim
against Rovelli for making verbal threats, such a claim must fail.  A claim of threats and
harassment alone, without allegations of accompanied injury or use of force, is insufficient
to state an Eighth Amendment claim.  See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir.
1996) (per curiam) ("The claim that a prison guard called Purcell names also did not allege
any appreciable injury and was properly dismissed."); Shabazz v. Pico, 994 F. Supp. 460,
474 (S.D.N.Y. 1998) ("[V]erbal harassment or profanity alone, unaccompanied by any
injury no matter how inappropriate, unprofessional, or reprehensible it might seem does
not constitute the violation of any federally protected right and therefore is not actionable
under . . . § 1983.").  Because Gillard does not allege that Rovelli used force against him
and no injury resulted from the verbal threats, Gillard has failed to state an Eighth
Amendment claim based on such threats.  Accordingly, Gillard's potential claim based on
verbal threats against Rovelli cannot withstand this motion to dismiss.

thereafter, Gillard was ordered to pack his cell in preparation again to be placed in IPC. Id. ¶ 39. At approximately 1:30, presumably in the afternoon, Lafountain provided Gillard the disposition of the hearing through Gillard's feed-up slot, saying, "you can read it." Id. Non-party Inmate Hooper witnessed this exchange. Id. Thereafter, while defendant Kelly, a deputy superintendent of security, made rounds, Gillard advised Kelly that he was denied the right to participate in his hearing, to which Kelly responded that he would investigate Gillard's claim and grant a rehearing if the claim was valid. Id. ¶ 40.

On February 9, 2009, the IPC hearing resumed. Compl. ¶ 41. Williams testified and lied about Gillard expressing fear of other inmates wanting to hurt him. Id. Ramey denied Gillard's request to have Williams take a lie detector test.[6] Id. Ramey, relying on Kelly's testimony that Gillard's issues involved security staff and not inmates, stated off-the-record he would not grant the IPC placement because such placement was unsupported by the evidence. Id. ¶ 42.

On February 10, 2009, Gillard moved to another cell. Compl. ¶ 43. On February 11, 2009, Rovelli went to Gillard's cell and stated, "I have the power not you, I brought you back. It's not over yet and the next one will be better . . . ." Id. ¶ 44. All the inmates in nearby cells overheard these comments; thus, creating a hostile living environment for Gillard. Id. Gillard asserts that Rovelli also ordered security officers to impede Gillard's ability to send legal papers by refusing to take out legal disbursements from Gillard's prisoner account. Id. ¶ 45, at 14.

On February 17, 2009, Gillard received the tape of his IPC hearing for review. Compl. ¶

---

[6] Gillard asserts that Rovelli attempted to use the inmate population against Gillard as justification for placing Gillard in IPC. Compl. ¶ 41.

6

46.  On the tape, Lafountain testified Gillard "stated he did not want to get cut again."  Id.

Defendant Hearing Officer and Lieutenant Zarnetski conducted that hearing; however,

Gillard asserts that Zarnetski was not impartial, the hearing was staged, and Zarnetski

never stated on-the-record that Gillard was offered to sign a hearing denial form and never

signed it.  Id.

On February 20, 2009, Gillard was denied a callout to review his medical file.  Compl.

¶ 47.  Gillard alleged that he was denied access to the law library during his three months of

keeplock confinement.[7]  Id. at 14.  Gillard specifically alleged that he was denied access to

legal supplies on February 10, 18, and 23, 2009 because of keeplock confinement, which

prevented him from responding to motions.  Id. ¶ 48.  Gillard further asserts that the use of

force incident report filed against him, presumably resulted in his keeplock confinement,

was based on false and conspiratorial accusations by defendants Deluca and Hendry, both

sergeants, that Gillard admitted to striking Nunez on the head.  Id. ¶ 49.

Williams continued to tamper with Gillard's grievances by ensuring those grievances

were devoid of wrongdoing on the part of the security staff.  Compl. ¶ 50.  Gillard's

grievance appeals were denied.  Id.

Kelly has been continuously advised of the ongoing threats made by Rovelli.  Compl. ¶

51.  Specifically, Rovelli has been "lobbying for inmates to take a contract hit on [Gillard]."

Id.  Kelly refused to relocate Gillard in order to prevent contact between Gillard and Rovelli

and allowed for the continuing physical and mental abuse on Gillard in retaliation for

---

[7] "Keeplock" is a form of disciplinary confinement where an inmate is confined in his cell for the duration of the disciplinary sanction.  Gittens v. Lefevre, 891 F.2d 38, 39 (2d Cir. 1989) (citing N.Y. COMP. CODES R. & REGS. tit. 7, § 251-1.6 (2012)).

Gillard's filing of grievances.  Id.

Defendant Superintendent Rock continued to disregard the conflicts between Gillard and Rovelli despite Gillard having filed over fifty complaints.  Compl. ¶ 52.  Rock was responsible for investigating these grievances but relied on Rovelli's denial of all wrongdoing.  Id.  Gillard also contends that Rock failed to review all available facts in denying his grievance appeals.  Id.

Gillard was further denied the right to press criminal charges of conspiracy to commit murder, attempted murder, and assault with a dangerous weapon, against the staff and prisoners who acted on behalf of defendants.[8]  Compl. at 15.  Gillard seeks declaratory and injunctive relief as well as compensatory and punitive damages.  Id. at 16–17.

## II.  Discussion

Gillard contends that defendant Rovelli violated his (1) First Amendment right of access to courts by ordering officers to refrain from taking legal disbursements from his prisoner account and (2) Eighth Amendment rights by ordering Nunez to murder him and creating hostile conditions of confinement by making other inmates aware of his criminal history.

---

[8]  Here, Gillard asserts that he has a constitutional right to press charges against defendants and the defendants violated this right by preventing him from doing so. However, the United States Constitution does not confer a judicially cognizable interest to a private citizen for the prosecution or non-prosecution of another.  Bourguignon v. Lantz, No. 05-CV-245 (SRU), 2006 WL 214009, at *6–7 (D. Conn. Jan. 25, 2006) (citing inter alia Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)); see also Marsh v. Kirschner, 31 F. Supp. 2d 79, 81 (D. Conn. 1998).  Therefore, even if defendants indeed prevented Gillard from pressing criminal charges against them, such a claim must be dismissed as meritless.

All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

Gillard contends that defendant Williams violated his (1) First Amendment right of access to courts by tampering with his grievances, (2) Fourteenth Amendment rights by recommending IPC for Gillard and lying at Gillard's IPC hearing. Gillard also contends that defendant Rock violated his (1) Eighth Amendment rights by exhibiting deliberate indifference to his safety and (2) Fourteenth Amendment rights by denying his grievances without reviewing all available facts.

Gillard further contends that: (1) defendants Lynch, Lipha, Rose, Besson, Kelly, Rock violated his Eighth Amendment rights by failing to protect him from Nunez; (2) defendant Lafountain violated his Fourteenth Amendment due process rights by denying him participation at his IPC hearing; (3) defendants Hendry, Deluca, Besson, and Williams violated his Fourteenth Amendment rights by making false allegations against him; (4) defendant Zarnetski violated his Fourteenth Amendment rights by acting as a partial hearing officer, staging a hearing, and never confirming he wanted to give up his hearing rights; and (5) defendant Ramey violated his Fourteenth Amendment rights by denying his request that Williams take a lie detector test. Lastly, Gillard generally alleges that all defendants conspired against him by authoring false reports in retaliation for the grievances he filed. Gillard does not make specific allegations against defendant Poirier.

Defendants contend that Gillard failed to allege a conspiracy claim as well as First Amendment and procedural due process claims. Defendants further contend that they are entitled to Eleventh Amendment immunity, qualified immunity, and a protective order barring discovery pending the resolution of this motion. The balance of Gillard's complaint was not addressed.

## A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." <u>Selevan v. N.Y. Thruway Auth.</u>, 584 F.3d 82, 88 (2d Cir. 2009). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "plausible on its face." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); <u>see</u> <u>also</u> <u>Arar v. Ashcroft</u>, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 680.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. <u>See</u> <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se
> litigant is entitled to special solicitude, that a pro se litigant's
> submissions must be construed liberally, and that such
> submissions must be read to raise the strongest arguments that
> they suggest. At the same time, our cases have also indicated
> that we cannot read into pro se submissions claims that are not
> consistent with the pro se litigant's allegations or arguments that
> the submissions themselves do not suggest that we should not
> excuse frivolous or vexatious filings by pro se litigants, and that
> pro se status does not exempt a party from compliance with
> relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).  It follows that,

> the mandate to read the papers of pro se litigants generously
> makes it appropriate to consider a plaintiff's paper in opposition
> to a defendant's motion to dismiss as effectively amending the
> allegations of the plaintiff's complaint, to the extent that those
> factual assertions are consistent with the allegations of the
> plaintiff's complaint.

Robles v. Bleau, No. 07-CV-0464, 2008 WL 4693153, at *6 & n.41 (N.D.N.Y. Oct. 22, 2008) (collecting cases).

## B. Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her]

11

own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)).  Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.  Halderman, 465 U.S. at 100.  Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states.  See Quern v. Jordan, 440 U.S. 332, 340–41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official.  Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)).  "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Here, Gillard seeks monetary damages against defendants for acts occurring within the scope of their duties at Great Meadow.  Thus, the Eleventh Amendment bar applies and serves to prohibit Gillard's claims for monetary damages against defendants in their official capacity.

Accordingly, defendants' motion on this claim should be granted.


## C. First Amendment

Defendants contend that Gillard failed to allege claims of right of access to courts and interference with legal mail under the First Amendment.

12

**1. Access to Courts**

Gillard alleged that defendants denied him his constitutional right of access to courts by refusing to take out disbursements from his prisoner account for legal fees and denied him access to the law library and legal supplies during his keeplock confinement, which led to his failure to respond to certain motions.

Prisoners have a constitutional right of access to the courts. <u>Lewis v. Casey</u>, 518 U.S. 343, 346 (1996). This right is implicated when prison officials "actively [interfer[e] with inmates' attempts to prepare legal documents . . . or file them . . . ." <u>Id.</u> at 350 (citing cases). The plaintiff must further allege that the defendant "took or was responsible for actions that 'hindered [his] efforts to pursue a legal claim.'" <u>Davis v. Goord</u>, 320 F.3d 346, 351 (2d Cir. 2003) (citations omitted). While only minimal assistance to file legal claims is required of prison officials, courts have cited <u>Lewis</u> to support "the right to 'proceed with a legal claim' . . . suggest[ing], at least, that <u>pro se</u> inmates should have the means to defend against dispositive motions and to prepare for trial." <u>Arce v. Walker</u>, 58 F. Supp. 2d 39, 43 (W.D.N.Y. 1999) (listing cases). An inmate would sufficiently state a denial of access to the courts claim by stating that a prison practice prevented him from "raising an argument or asserting a claim in his pleadings, in response to a dispositive motion . . . ." <u>Id.</u> However, a prison regulation or practice that impinges on an inmate's constitutional right must be upheld if it is reasonably related to a legitimate penological interest. <u>Id.</u> at 44.

In order to establish a denial of access to the courts claim, a plaintiff must satisfy two prongs. First, a plaintiff must show that the defendant acted deliberately and maliciously. <u>Davis v. Goord</u>, 320 F.3d 346, 351 (2d Cir. 2003) (citation omitted); <u>Howard v. Leonardo</u>, 845 F. Supp. 943, 946 (N.D.N.Y. 1994) (citation omitted). Second, a showing of an actual

injury is required, which "is not satisfied by just any type of frustrated legal claim," because the Constitution guarantees only the tools that "inmates need . . . in order to challenge the conditions of their confinement." Collins v. Goord, 438 F. Supp. 2d 399, 415–16 (S.D.N.Y. 2006) (quoting Lewis, 518 U.S. at 355); Howard, 845 F. Supp. at 946 (citation omitted). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Collins v. Goord, 438 F. Supp. 2d at 415–16.

Viewing the facts in the light most favorable to the plaintiff, if properly pled, Gillard may state a plausible First Amendment claim based on the denial of access to the law library, legal supplies, and his prisoner account. First, Gillard alleged that defendants actively interfered with his ability to prepare legal documents in response to motions filed by opposing counsel. Second, Gillard alleged that Rovelli had ordered other defendants to deny him access to his prisoner account. This could plausibly constitute a prison practice established by Rovelli to impede Gillard from responding to opposing counsel's motions. Such would also indicate that defendants had acted deliberately and maliciously against Gillard. Despite Gillard's failure to proffer any factual allegations going to how defendants' misconduct had adversely affected or impacted his legal claims and lawsuits, as well as the merits of such claims and lawsuits, a properly pled complaint may resolve such defects. Collins, 581 F. Supp. 2d at 573 (citation omitted) ("To show actual injury, the plaintiff must demonstrate that the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim."). Gillard should be provided this opportunity. Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the

14

complaint gives any indication that a valid claim might be stated." (citation omitted)).  Gillard should amend his complaint to make specific allegations of an injury in connection to defendants' alleged misconduct.

Accordingly, it is recommended that this First Amendment claim be dismissed without prejudice and Gillard be granted an opportunity to file an amended complaint containing all relevant facts regarding this claim against specific defendants.


## 2.  Mail Tampering

Gillard also alleged that defendants prevented him from sending legal mail.  "A prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment."  Davis, 320 F.3d at 351 (citations omitted).  "Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution."  Id.  In order to state a claim for denial of access to courts, including those premised on interference with legal mail, a plaintiff must allege "that a defendant caused 'actual injury,' i.e. took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'"  Id. (citing Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997) (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)).

"[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation . . . . Rather, the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail."  Davis, 320 F.3d at 351 (citations omitted); see also Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986) (explaining that an action may not give rise to damages if there was "no showing . . . that the inmate's

right of access to the courts was chilled or the legal representation was impaired."); <u>Morgan v. Montanye</u>, 516 F.2d 1367, 1371 (2d Cir. 1975) (holding that a single instance of mail tampering which did not lead the plaintiff to suffer any damage was insufficient to support a constitutional challenge).

Additionally, the First Amendment protects an inmate's right to the free flow of incoming and outgoing mail and courts consistently afford greater protection to legal mail than non-legal mail and to outgoing mail then incoming mail. <u>Davis</u>, 320 F.3d at 351 (citations omitted). "Restrictions . . . are justified only if they further one or more of the substantial governmental interests of security, order, and rehabilitation and must be no greater than is necessary or essential to the protection of the particular government interest involved." <u>Id.</u> (citations omitted).

In this case, defendants merely contend that Gillard failed to allege that he sustained an actual injury from defendants' conduct in failing to take legal disbursements from his prisoner account. Defs.' Mem. of Law at 11. Gillard alleged that his outgoing legal mail was affected by defendants. Specifically, Gillard alleged that defendants' conduct led him to fail to respond to certain motions. Further, Gillard claims that Rovelli ordered the other defendants to continually carry out this conduct. Thus, Gillard has alleged that defendants' conduct was regularly done or an ongoing practice. Even though Gillard does not expressly allege that he suffered an injury from failing to respond to certain motions, if properly pled, Gillard may sufficiently allege a plausible First Amendment claim based on interference with his outgoing legal mail. Because a liberal reading of the complaint may present a valid claim, it is recommended that Gillard be granted an opportunity to amend his complaint to include all allegations relevant to this claim. <u>Gomez</u>, 171 F.3d at 795. "This is especially

16

true since [Gillard] alleges that [defendants tampered with] . . . his outgoing legal mail, which is subject to greater constitutional protection because of the lesser security concerns presented." Davis, 320 F.3d at 352 (citations omitted). Gillard should amend his complaint to make specific allegations of an injury in connection to defendants' alleged misconduct.

Accordingly, it is recommended that this First Amendment claim be dismissed without prejudice and Gillard be granted an opportunity to file an amended complaint containing all relevant facts regarding this claim against specific defendants.

### D. Fourteenth Amendment

To state a claim for procedural due process, there must first be a liberty interest which requires protection. See generally Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994) ("[P]rocedural due process questions [are analyzed] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.") (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). The Second Circuit has articulated a two-part test whereby the length of time a prisoner was placed in segregation as well as "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population" are to be considered. Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998). This standard requires a prisoner to establish that the confinement or condition was atypical and significant in relation to ordinary prison life. See Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).

While not a dispositive factor, the duration of a disciplinary confinement is a significant

factor in determining atypicality.  <u>Colon v. Howard</u>, 215 F.3d 227, 231 (2d Cir. 2000)

(citations omitted).  The Second Circuit has not established "a bright line rule that a certain

period of [Special Housing Unit] SHU confinement automatically fails to implicate due

process rights."[9]  <u>Palmer v. Richards</u>, 364 F.3d 60, 64 (2d Cir. 2004) (citations omitted).

Instead, the Second Circuit has provided guidelines that "[w]here the plaintiff was confined

for an intermediate duration—between 101 and 305 days—development of a detailed

record of the conditions of confinement relative to ordinary prison conditions is required."

<u>Id.</u> at 64–65 (citing <u>Colon</u>, 215 F.3d at 232).  "[I]n the absence of a detailed factual record,

cases in this Circuit typically affirm dismissal of due process claims where the period of time

spent in SHU was short – e.g. 30 days – and there was no indication [of] . . . unusual

conditions."  <u>Harvey v. Harder</u>, No. 09-CV-154 (TJM)(ATB), 2012 WL 4093791, at *6

(N.D.N.Y. July 31, 2012) (citing <u>inter</u> <u>alia</u> <u>Palmer</u>, 364 F.3d at 65–66).

   In this case, defendants' contention against Gillard's procedural due process claims

rests solely on whether Gillard has established a liberty interest from being confined in

keeplock.  Defs.' Mem. of Law at 12–13.  Gillard was in keeplock confinement for ninety

days, over the thirty-day time period that courts have found to not reach atypicality absent

unusual conditions.  Other than the length of the keeplock confinement, Gillard's complaint

does not contain any allegations to indicate that his confinement was atypical or significant

---

[9]  SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit 7, § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  <u>Id.</u> at pt. 301.

in relation to the ordinary prison life.  Even though keeplock is less confining than SHU,[10] in the past, this Court has concluded that such a period of confinement requires "refined fact-finding" in order to resolve claims under <u>Sandin</u>.  <u>White v. Bergenstock</u>, No. 08-CV-717 (FJS)(DRH), 2009 WL 4544390, at *7 (N.D.N.Y. Nov. 25, 2009) (citing <u>Colon v. Howard</u>, 215 F.3d 227, 230 (2d. Cir. 2000)) (denying a motion to dismiss the procedural due process claim for development of facts going to plaintiff's liberty interest arising from his ninety-day keeplock confinement).  Thus, questions of fact exist with respect to whether Gillard's ninety days in keeplock amount to a liberty interest.  Given Gillard's pro se status and the length of his keeplock confinement, Gillard's due process claims should not be dismissed at this stage of the litigation.

Accordingly, defendants' motion on this ground should be denied.


## E.  Conspiracy[11]

In order to support a claim for conspiracy under §§ 1983 or 1985, there must be "(1) an agreement . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  <u>Ciambriello v. Cnty. of Nassau</u>, 292 F.3d 307, 324–25 (2d Cir. 2002); <u>Cusamano v. Sobek</u>, 604 F. Supp. 2d 416, 468 (N.D.N.Y. 2009).  An agreement must be proven with specificity as bare allegations of a conspiracy

---

[10]  Inmates in keeplock enjoy more amenities than do inmates in SHU such as showers, on-site social and legal visits, sending and receipt of mail, and materials from the law library.  <u>Warburton v. Goord</u>, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998).

[11]  Defendants also asserts that any conspiracy claims are effectively barred by the intra-corporate conspiracy doctrine.  However, because it is recommended herein that defendants' motion as to the conspiracy claim be granted on other grounds, their motion based on the intra-corporate conspiracy doctrine need not be addressed.

supported only by allegations of conduct easily explained as individual action is insufficient. See Iqbal v. Hasty, 490 F.3d 143,177 (2d Cir. 2007); see also Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999).  Thus, plaintiffs must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." Warren v. Fischl, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted).  While exact specifics are not required, "the pleadings must present facts tending to show agreement and concerted action." Anilao v. Spota, 774 F. Supp. 2d 457, 512–13 (E.D.N.Y. 2011) (citations omitted).  Conclusory, vague, and general allegations are insufficient to support a conspiracy claim. Ciambriello, 292 F.3d at 325.

Here, Gillard failed to allege sufficient facts to support a viable conspiracy claim between defendants in their alleged failure to protect him as well as retaliation for the filing of grievances.  Gillard's claims of conspiracy are solely conclusory. Ciambriello, 292 F.3d at 325.  There were no factual allegations showing that defendants had any type of agreement between them.  Further, there were no allegations outlining with specificity when, why, or how this alleged conspiracy occurred. Warren, 33 F. Supp. 2d at 177.  Even though specifics are unnecessary, Gillard fails to provide any plausible information which would lend credence to his claims of an explicit or implicit agreement between any or all of the defendants. Anilao, 774 F. Supp. 2d at 512–13.

Accordingly, defendants' motion on this claim should be granted.


## F.  Qualified Immunity

Defendants claims that even if Gillard's constitutional claims against them are

substantiated, they are nevertheless entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229–30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 F. App'x 146 (2d Cir. 2003).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation.  Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry must be discussed with regard to Gillard's First Amendment right to access to courts and interference with mail claims as well as Fourteenth Amendment procedural due process claims.

It is well-settled that between January 23, 2009 and February 20, 2009, the First Amendment protected an inmate's right to access to the courts and the free flow of incoming and outgoing mail.  Lewis , 518 U.S. at 346; Davis, 320 F.3d at 351.  It is also well-settled that during this relevant time period, the Fourteenth Amendment protected an inmate's right to procedural due process.  Wolff v. McDonnell, 418 U.S. 539, 555 (1974) ("Prisoners may also claim the protections of the Due Process Clause.  They may not be

21

deprived of life, liberty, or property without due process of law." (citations omitted)). Thus,

accepting all of Gillard's allegations as true, qualified immunity cannot be granted to

defendants for their alleged misconduct.

Accordingly, defendants' motion on this ground should be denied.


## G. Protective Order

Pursuant to Federal Rule of Civil Procedure 26(c)(1), defendants moved for a protective

order staying discovery in this matter pending the resolution of their motion to dismiss.

Defs.' Mem. of Law at 16–17. Rule 26(c)(1) provides, in relevant part, that

> [a] party or any person from whom discovery is sought may
> move for a protective order in the court where the action is
> pending . . . The Court may, for good cause, issue an order to
> protect a party or person from annoyance, embarrassment,
> oppression, or undue burden or expense, including one or more
> of the following: (A) forbidding the disclosure or discovery.

FED. R. CIV. P. 26(c)(1). Good cause can be shown where, upon the filing of a dispositive

motion, the stay is for a modest period of time and not prejudice the opposing party.

Spencer Trask Software and Information Servs., LLC v. Rpost Int'l Ltd., 206 F.R.D. 367,

368 (S.D.N.Y. 2002) (citation omitted). When considering the issuance of a protective

order, a Court may consider "the breadth of discovery sought and the burden of responding

to it" as well as "the strength of the dispositive motion that is the basis of the discovery stay

application. Id. (citations omitted). "This rule is often invoked to avoid potentially expensive

and wasteful discovery during the pendency of a determination which could potentially

reshape pending claims." Dabney v. Maddock, No. 10-CV-0519 (GTS)(DEP), 2011 WL

7479164, at *11 (N.D.N.Y. Nov. 29, 2011) (collecting cases) (recommending stay of

discovery pending a Rule 16 pretrial scheduling order is issued and until the claims are framed, and when plaintiff would not be prejudiced by modest delay).

In this case, until a standard Rule 16 pretrial scheduling order is issued, permitting discovery to go forward would serve no purpose. This is particularly in light of the fact that this report recommends Gillard's First and Fourteen Amendment claims, as discussed supra, be dismissed without prejudice and Gillard be granted an opportunity to amend his complaint. Further, Gillard has provided no reasons for the Court conclude that he would be prejudiced by a modest delay due to stay of discovery at this stage. Spencer Trask Software, 206 F.R.D. at 368. Moreover, the Office of the Attorney General represents fourteen separate defendants in this action. To engage in discovery before the resolution of this motion to dismiss, as well as the potential filing of an amended complaint, would result in potentially expensive and wasteful discovery.

Accordingly, defendants' motion for a protective order to stay discovery should be granted.

### III. Conclusion

For the reasons stated above, it is hereby:

1. **RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 41) be:

   A.   **GRANTED** as to the (1) Eleventh Amendment bar to § 1983 claims against all individual defendants in their official capacities; (2) conspiracy claim against all defendants; AND

   B.   **DENIED** as to the (1) Fourteenth Amendment due process claims; and (2)

qualified immunity defense.

2. It is further **RECOMMENDED** that Gillard's First Amendment claims based on access to courts and interference with mail be **DISMISSED** without prejudice;

3. It is further **ORDERED** that, as to those claims, Gillard may file an amended complaint within **twenty days** from the filing date of any Order adopting this Report-Recommendation, if he wishes to pursue those claims; AND

4. It is further **RECOMMENDED** that, if within twenty days, such an amended complaint is not filed, those claims shall be dismissed pursuant to any order adopting this report-recommendation without further action of the Court.

5. It is also **RECOMMENDED** that defendants' request for a protective order be granted.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  July 18, 2013
        Albany, New York

*Christian F. Hummel*

Christian F. Hummel
U.S. Magistrate Judge