# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

GARY GILLARD,

                                Plaintiff,

      v.                                        No. 12-CV-83
                                                (LEK/CFH)

MICHAEL ROVELLI, Correctional Officer, Great
Meadow Correctional Facility; THOMAS LAFOUNTAIN,
Correctional Officer, Great Meadow Correctional Facility;
TOM LYNCH, Correctional Officer, Great Meadow
Correctional Facility; GARY LIPHA, Correctional Officer,
Great Meadow Correctional Facility; ANDREW ROSE,
Correctional Officer, Great Meadow Correctional Facility;
DARIN WILLIAMS, Correctional Sergeant, Great
Meadow Correctional Facility; KEITH HENDRY,
Correctional Sergeant, Great Meadow Correctional
Facility; NICHOLAS DELUCA, Correctional Sergeant,
Great Meadow Correctional Facility; PETER BESSON,
Correctional Lieutenant, Great Meadow Correctional
Facility; PAUL ZARNETSKI, Correctional Lieutenant,
Great Meadow Correctional Facility; CHARLES F. KELLY,
Deputy Superintendent of Security, Great Meadow
Correctional Facility; GARY RAMEY, Industrial
Supervisor, Great Meadow Correctional Facility; DAVID
ROCK, Superintendent, Great Meadow Correctional
Facility; JOSE NUNEZ, Inmate: DIN # 98-A-6830,
NOW AT SING SING C.F., previously housed at
Great Meadow Correctional Facility,

                                Defendants.[1]

_____

**APPEARANCES:**                            **OF COUNSEL:**

GARY GILLARD
Plaintiff Pro Se
01-A-1613
Attica Correctional Facility

_____

[1] By Text Order, defendant Poirier was terminated from this action. Dkt. No. 94.
Furthermore, in his notice and acknowledgment of receipt of summons and complaint,
defendant "Lipha" is actually spelled "Lipka." Dkt. No. 19. The Court notes this mere error
on Gillard's part and proceeds to use the latter spelling in this Report-Recommendation.

Box 149
Attica, New York 14011


HON. ERIC T. SCHNEIDERMAN             RICHARD LOMBARDO, ESQ.
Attorney General for the                      Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

Plaintiff pro se Gary Gillard ("Gillard"), an inmate currently in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, thirteen current and retired DOCCS employees and one inmate, violated his constitutional rights under the First, Eighth, and Fourteenth Amendments. Compl. (Dkt. No. 1). Presently pending is defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on behalf of all defendants except for defendant Nunez. Dkt. No. 104. Gillard opposes. Dkt. No. 114. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.


### I. Background

The specific facts of the case are set forth in the Report-Recommendation and Order filed July 18, 2013, familiarity with which is assumed. See Dkt. No. 84 (Report-

---

[2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Recommendation); Dkt. No. 92 (Order adopting Report-Recommendation).  The facts are related herein in the light most favorable to Gillard as the non-moving party.  See subsection II(A) infra.  At all relevant times, Gillard was confined at the Great Meadow Correctional Facility ("Great Meadow").  Compl. ¶ 4.

On January 23, 2009, defendant Sergeant Williams approached Gillard with an inmate-authored note and asked Gillard whether he wanted to be placed in protective custody.  Compl. ¶ 21.  Because of the nature of Gillard's criminal history, the inmate threatened Gillard's life and requested that Gillard be transferred out of Great Meadow.  Id. ¶ 20.  Gillard responded that the correctional staff issued the note, not an inmate, in retaliation for Gillard lodging complaints against the staff.  Id. ¶ 21.  On January 25, 2009, Williams recommended Gillard for Involuntary Protective Custody ("IPC").  Id. ¶ 22.  On January 28, 2009, the IPC hearing was adjourned because Williams was unavailable to attend.  Id. ¶ 23.

On February 4, 2009, defendant Lynch, a corrections officer, escorted Gillard to the IPC hearing.  Compl. ¶ 24.  Gillard was ordered to sit, presumably in the waiting room.  Id. ¶ 25.  Lynch entered another room, leaving Gillard alone.  Id. ¶ 26.  Defendant Lieutenant Besson entered the waiting room and advised Gillard that Gillard was to blame for the ongoing issues.  Id. ¶ 27.  Besson walked into the other room with defendants and Corrections Officers Lipka, Lynch, and Rose.  Id. ¶¶ 27–29.

Lipka returned with defendant Inmate Nunez and ordered Nunez to sit next to Gillard as Lipka walked into the other room with Lynch and other unidentified individuals.  Compl. ¶ 30.  Gillard could see into the other room that Besson and Rose were conducting a hearing.  Id.

While Gillard was sitting and watching Besson and Rose, Nunez grabbed Gillard's right

arm, cut Gillard's neck, and pushed Gillard off balance. Compl. ¶ 31. Nunez proceeded to run to the center of the room, blocked the views of Besson and Rose, and held out a weapon. Id. Gillard yelled, staff personnel exited from different rooms, and Nunez surrendered his weapon to unidentified persons. Id. Gillard refrained from hitting or swinging at Nunez, complied with all staff orders, and was handcuffed and transported for medical attention. Id. Gillard contends that defendant Rovelli, a corrections officer, ordered Nunez to murder Gillard. Id. at 14.

On February 5, 2009, a false misbehavior report was issued against Gillard, stating that Besson witnessed Gillard punching Nunez in the head. Compl. ¶ 33. Gillard was then ordered to pack and leave his cell. Id. ¶ 35. When Gillard reached the lobby, Rovelli was standing with unnamed individuals and told Gillard, "Gary, it's not over yet . . . ." Id. Gillard filed a grievance against Rovelli. Id. ¶ 36. The grievance was denied. Id. At another time during the day, Gillard was on his way to a visit when Rovelli, who was standing in the hall with unidentified officers and inmates, called Gillard "a rat." Id. ¶ 37.

On February 6, 2009, defendant Lafountain, a corrections officer, came to Gillard's cell and told Gillard, "you['re] refusing the hearing right[s]." Compl. ¶ 38. Gillard replied that he did not refuse his hearing rights and wanted to attend his hearing; however, Lafountain walked away. Id. Non-party Inmate Johnson witnessed this exchange. Id. Shortly thereafter, Gillard was ordered to again pack his cell in preparation to be placed in IPC. Id. ¶ 39. That afternoon, Lafountain provided Gillard the hearing disposition. Id. Non-party Inmate Hooper witnessed this exchange. Id. Thereafter, while defendant Kelly, a deputy superintendent of security, made rounds, Gillard advised Kelly that he was denied the right to participate in his hearing, to which Kelly responded that he would investigate Gillard's

4

claim and grant a rehearing if the claim was valid.  Id. ¶ 40.

On February 9, 2009, the IPC hearing resumed.  Compl. ¶ 41.  Williams testified and lied about Gillard expressing fear of other inmates.  Id.  Ramey denied Gillard's request to give a polygraph examination to Williams.  Id.  Ramey, relying on Kelly's testimony that Gillard's issues involved security staff and not inmates, stated off-the-record that he denied the IPC placement because it would be unsupported by the evidence.  Id. ¶ 42.

On February 10, 2009, Gillard moved to another cell.  Compl. ¶ 43.  On February 11, 2009, Rovelli went to Gillard's cell and stated, "I have the power not you, I brought you back.  It's not over yet and the next one will be better . . . ."  Id. ¶ 44.  The inmates in nearby cells overheard these comments.  Id.

On February 17, 2009, Gillard received the audio tape of his IPC hearing.  Compl. ¶ 46.  On the tape, Lafountain testified that Gillard "stated he did not want to get cut again."  Id.  Defendant Hearing Officer and Lieutenant Zarnetski conducted that hearing; however, Gillard asserts that the tape shows Zarnetski failing to act impartially, the hearing was staged, and Zarnetski never confirmed that Gillard had declined to sign a hearing waiver form.  Id.  Gillard asserts that Zarnetski denied him "the right to have witness[es testify on his behalf], take testimony and failed to review the facts of the events[,] rel[]ying on reports of Defendants Deluca and Hendry."  Dkt. No. 114 ¶ 11.  Gillard further asserts that the use of force incident report filed against him, presumably resulted in his keeplock confinement,[3] was based on false allegations made by defendants and Sergeants Deluca and Hendry,

_____

[3]  "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities."  Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. COMP. CODES R. & REGS. tit. 7, § 301.6.

claiming that Gillard admitted to striking Nunez on the head.  Compl. ¶ 49.

Gillard alleged that, on Rovelli's order, Gillard was attacked on February 4, 2009, March 9, 2009, and April 25, presumably in 2009.  Dkt. No. 114 ¶ 13.  For the first two incidents, Gillard served thirty days of keeplock.  Id.  For the third incident, Gillard served sixteen months in the Special Housing Unit ("SHU").[4]  Id.  Gillard does not allege that this February 4, 2009 incident is connected to the incident involving Nunez.

Kelly has been advised of the ongoing threats made by Rovelli.  Compl. ¶ 51. Specifically, Rovelli has been "lobbying for inmates to take a contract hit on [Gillard]."  Id. Kelly refused to relocate Gillard in order to prevent contact between Gillard and Rovelli and allowed for the continuing physical and mental abuse on Gillard in retaliation for Gillard's filing of grievances.  Id.

Defendant Superintendent Rock continued to disregard the conflicts between Gillard and Rovelli despite Gillard having filed over fifty complaints.  Compl. ¶ 52.  Rock was responsible for investigating these grievances but relied on Rovelli's denial of all wrongdoing.  Id.  Gillard also contends that Rock failed to review all available facts in denying his grievance appeals.  Id.

---

[4]  SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

## II. Discussion[5]

Gillard contends that his Eighth Amendment rights were violated when: (1) defendant Rovelli created adverse conditions of confinement by ordering Nunez to murder him as well as disclosed Gillard's criminal history to other inmates; (2) defendants Kelly and Rock exhibited deliberate indifference to his safety by denying his grievances and complaints; and (3) defendants Lynch, Lipka, Rose, Besson, Kelly, Rock violated his Eighth Amendment rights by failing to protect him from Nunez.

Gillard further contends that his Fourteenth Amendment right were violated when: (1) defendant Rock denied his grievances without thorough investigations; (2) defendant Williams recommended IPC for Gillard and made false allegations at Gillard's IPC hearing; (3) defendant Lafountain denied him participation at his IPC hearing; (4) defendants Besson, Deluca, and Hendry made false allegations against him; (5) defendant Zarnetski denied him the opportunity to summon witnesses and present his defense, served as a partial hearing officer, staged the IPC hearing, and never confirmed Gillard's intention to waive his hearing rights; and (6) defendant Ramey denied his request to administer a polygraph examination to Williams.

Defendants contend that Gillard has failed to allege plausible claims. Defs.' Mem. of Law (Dkt. No. 104-1).

---

[5] On October 17, 2012, defendants filed a motion to dismiss certain claims. Dkt. No. 41. On July 18, 2013, the undersigned recommended that defendants' motion on the (1) conspiracy claim against all defendants and claims against all individual defendants in their official capacities be granted and (2) Fourteenth Amendment due process claims and qualified immunity defense be denied. Dkt. No. 84 at 23–24. By decision and order dated September 30, 2013, those recommendations were adopted. Dkt. No. 92.

7

**A. Legal Standard**

"The standard for granting a Rule 12(c) motion . . . is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted).  Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009).  However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "plausible on its face." Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted).  Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 680.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

8

477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v.

Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous

to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a

court is obliged to construe his pleadings liberally.'" (citations omitted)).  It follows that,

> the mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's paper in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.

Robles v. Bleau, No. 07-CV-0464, 2008 WL 4693153, at *6 & n.41 (N.D.N.Y. Oct. 22, 2008)

(collecting cases).[6]


## B.  Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment."  U.S.

CONST. amend. VIII.  Eighth Amendment obligations include the duty to protect prisoners

---

[6]  All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

from other known harms. <u>Farmer v. Brennan</u>, 511 U.S. 825, 829 (1970); <u>Matthews v. Armitage</u>, 36 F.Supp.2d 121, 124 (N.D.N.Y.1999) (citations omitted). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. <u>Id.</u> "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." <u>Id.</u> at 844.

### 1. Conditions of Confinement

The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates in their custody. <u>Hayes v. New York City Dep't of Corr.</u>, 84 F.3d 614, 640 (2d Cir. 1996) (citing <u>Farmer</u>, 511 U.S. at 832–33). "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." <u>Farmer</u>, 511 U.S. at 832. As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test." <u>Jolly v. Coughlin</u>, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). Thus, "a prisoner may prevail only where he proves both an objective element—that the prison officials' transgression was sufficiently serious—and a subjective element—that the officials acted, or omitted to act, with a sufficiently culpable state of mind . . . ." <u>Phelps v. Kapnolas</u>, 308 F.3d 180, 185 (2d Cir. 2002) (internal quotation marks and citations omitted).

> The objective prong can be satisfied by conditions of
> confinement . . . [which] in combination [constitute an Eighth
> Amendment violation] when each would not do so alone . . .
> [such as] when the conditions have a mutually enforcing effect
> that produces the deprivation of a single, identifiable human
> need such as food, warmth, or exercise—for example, a low cell
> temperature at night combined with a failure to issue blankets.

Davidson v. Murray, 371 F. Supp. 2d 361, 370 (W.D.N.Y. 2005) (citations omitted).

However, "[n]othing so amorphous as overall conditions can rise to the level of cruel and

unusual punishment when no specific deprivation of a single human need exists." Id. (citing

Wilson v. Seiter, 501 U.S. 294, 304–05 (1991)).  The subjective prong requires "a prison

official [to] have a sufficiently culpable state of mind . . ., of deliberate indifference to inmate

health or safety." Farmer, 511 U.S. at 834 (citations omitted).

    In this case, Gillard has failed to state plausible Eighth Amendment claims against

Rovelli.  Gillard first contends that Rovelli violated his Eighth Amendment rights by ordering

Nunez to murder him.  However, despite Gillard's conclusory accusation, Gillard has failed

to proffer sufficient factual allegations to satisfy either the objective or subjective prong of

the analysis. Iqbal, 556 U.S. at 678.  Even viewing the facts in the light most favorable to

the plaintiff, Gillard does not allege how Rovelli was connected to the incident involving

Nunez and merely speculates that Rovelli was responsible for Nunez's actions. Triestman,

470 F.3d at 477.  While Gillard alleges that he has filed a plethora of complaints against

Rovelli and was attacked on three separate occasions, Gillard does not proffer any

communication occurring between himself and Rovelli, either before or after the attacks,

which could plausibly suggest that Rovelli had ordered inmates to either physically hurt or

murder Gillard.  Gillard's pleadings are simply devoid of any factual allegations showing that

Rovelli's actions were sufficiently serious and Rovelli had a sufficiently culpable state of

mind for purposes of the Eighth Amendment analysis. <u>Phelps</u>, 308 F.3d at 185. As such, Gillard has failed to state an Eighth Amendment claim against Rovelli based on the alleged attempted murder orders.

Gillard next contends that Rovelli created adverse conditions of confinement by disclosing Gillard's criminal history to other inmates. Here, Gillard also failed to state a plausible Eighth Amendment claim against Rovelli. While Gillard proffered allegations showing that Rovelli had called Gillard certain names and disclosed Gillard's criminal history to correctional officers and inmates, Gillard failed to allege how such disclosure subjected him to any actual harm. As an initial matter, claims of threats and harassment alone, without allegations of accompanied injury or use of force, is insufficient to state an Eighth Amendment claim. <u>See</u> <u>Purcell v. Coughlin</u>, 790 F.2d 263, 265 (2d Cir. 1996) (per curiam) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed."); <u>Shabazz v. Pico</u>, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does not constitute the violation of any federally protected right and therefore is not actionable under . . . § 1983."). Gillard alleged that he received a note, the author of which had threatened his life because of the nature of his criminal history. However, there are no factual allegations going to how the origin of that note involved Rovelli. In fact, Gillard's criminal history consists of information that has been made available to the public. <u>See</u> <u>Paul P. v. Verniero</u>, 170 F.3d 396, 403 (3d Cir. 1999) ("arrest records and related information are not protected by a right to privacy"). As such, assuming Rovelli had disclosed Gillard's criminal history to other staff and inmates, such conduct does not rise to the level of a constitutional violation. Thus,

Gillard has failed to allege a plausible Eighth Amendment claim against Rovelli based on such disclosure.  Iqbal, 556 U.S. at 678.

    Accordingly, defendants' motion on this ground should be granted.


## 2.  Personal Involvement

    Defendants note that in § 1983 actions, it is a prerequisite for a plaintiff to establish the personal involvement of a defendant in the alleged constitutional deprivations.  Defs.' Mem. of Law (Dkt. No. 104-1) at 17.  "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority.  Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319,

323-24 (2d Cir. 1986)).[7]

Merely writing letters and grievances to a defendant is insufficient to establish notice and personal involvement. <u>Smart v. Goord</u>, 441 F. Supp. 2d 631, 643 (S.D.N.Y. 2006) ("Commissioner . . . cannot be held liable on the sole basis that he did not act in response to letters of protest sent by [plaintiff] . . . ."). Similarly, receipt of a letter or grievance, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement. <u>See, e.g.</u>, <u>Rivera v. Fischer</u>, 655 F. Supp. 2d 235, 238 (W.D.N.Y.2009) (citing cases); <u>Boddie v. Morgenthau</u>, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) ("While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . [p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint."). Furthermore,

> [i]t has been held that "an appropriate guiding principle" for determining personal responsibility is where a grievance alleges an "ongoing" constitutional violation, the supervisory official who reviews the grievance is "personally involved" if he is confronted with a situation that he can remedy directly. If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to "remedy" a violation.

<u>Harnett v. Barr</u>, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) (internal citations omitted).

---

[7] Various courts in the Second Circuit have postulated how, if at all, the <u>Iqbal</u> decision affected the five <u>Colon</u> factors which were traditionally used to determine personal involvement. <u>Pearce v. Estate of Longo</u>, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), <u>rev'd in part on other grounds sub nom.</u>, <u>Pearce v. Labella</u>, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated <u>Iqbal's</u> impact on the five <u>Colon</u> factors); <u>Kleehammer v. Monroe Cnty.</u>, 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third <u>Colon</u> categories pass <u>Iqbal's</u> muster . . . ."); <u>D'Olimpio v. Crisafi</u>, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that <u>Iqbal</u> eliminated <u>Colon's</u> personal involvement standard).

14

Here, Gillard has failed to allege the personal involvement of Superintendent Rock for purposes of a deliberate indifference claim.  Gillard contends that defendant Rock exhibited deliberate indifference to his safety when Rock disregarded the conflicts between Gillard and Rovelli despite the complaints lodged by Gillard.  Gillard specifically alleged that Rock was involved in denying his grievances.  Rivera, 655 F. Supp. 2d at 238.  Nevertheless, Gillard failed to indicate when he filed those grievances and when Rock denied them.  Harnett, 538 F. Supp. 2d at 524.  Gillard has also failed to specify what issues were raised in those grievances.  Assuming Gillard had grieved about the conflicts alleged in his complaint, as discussed supra, those claims against Rovelli are without merit.  Thus, Rovelli would not have been notified that unconstitutional acts were occurring.  Colon, 58 F.3d at 873.  Therefore, Gillard has failed to establish that the grievances served as notice to Rock.  One cannot plausibly infer that Gillard's grievances, which Rock had dismissed, provided Rock with notice.  As such, the grievances filed were insufficient to allege personal involvement.  Colon, 58 F.3d at 873.  For the above reasons, Gillard has failed to allege a plausible deliberate indifference claim against Rock.  Iqbal, 556 U.S. at 678.

A similar analysis applies to Kelly.  Gillard contends that Kelly was advised of the ongoing threats made by Rovelli.  However, Gillard does not allege how and when Kelly was advised of such threats.  Furthermore, threats alone are insufficient to state a constitutional violation.  Purcell, 790 F.2d at 265; Shabazz, 994 F. Supp. at 474.  Gillard does not allege sufficient facts to show that Kelly received notice of unconstitutional acts occurring.  Colon, 58 F.3d at 873.  Thus, Gillard has also failed to allege Kelly's personal involvement, and in turn, a plausible deliberate indifference claim.  Iqbal, 556 U.S. at 678.

Accordingly, defendants' motion on this ground should be granted.

15

### 3. Failure to Protect

As with other Eighth Amendment claims, in a failure to protect context, a "plaintiff must satisfy both an objective . . . and subjective test." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). To state a cognizable failure to protect claim, the plaintiff must "demonstrate that 1) he was incarcerated under conditions posing a substantial risk of serious harm, and that 2) prison officials exhibited deliberate indifference to the inmate's plight." Murray v. Goord, 668 F. Supp. 2d 344, 357 (N.D.N.Y. 2009) (citing Farmer, 511 U.S. at 834, Matthews v. Armitage, 36 F. Supp. 2d 121, 124–25 (N.D.N.Y. 1999), Coronado v. LeFevre, 886 F. Supp. 220, 224 (N.D.N.Y. 1995)). The plaintiff must "allege that corrections officers knew of and disregarded a particular risk to his safety." Parris v. New York State Dep't of Corr. Servs., 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) (citation omitted). Furthermore, the plaintiff must also proffer factual allegations showing that the defendant "knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff." Id. (citation omitted).

In this case, Gillard has failed to allege a failure to protect claim against defendants Besson, Kelly, Lipka, Lynch, Rock, and Rose. Gillard asserts that prior to being placed with Nunez in the same room, Besson spoke to Gillard then left to conduct a hearing. Gillard alleges that Lynch had escorted Gillard to his IPC hearing and left Gillard. Lynch later returned as Lipka escorted Nunez into the room and ordered Nunez to sit next to Gillard. Rose had walked through the room where Gillard was held then entered the hearing room. While Besson, Lipka, Lynch, and Rose were in the vicinity of the inmate-on-inmate attack, they were not in the room when Nunez attacked Gillard. Further, Gillard proffers no factual allegations going to how these defendants was aware that Nunez had the predisposition or

intention to attack Gillard.  <u>Parris</u>, 947 F. Supp. 2d at 363.  Moreover, Gillard failed to allege

that he had a prior altercation with Nunez and defendants had knowledge of it.  <u>Id.</u>

Similarly, Gillard does not allege that either Kelly or Rock was present during the attack,

possessed knowledge of Nunez's predisposition to attack Gillard, or knew of a prior

altercation between Gillard and Nunez.  <u>Id.</u>  As such, Gillard has failed to allege that he was

incarcerated under conditions posing a substantial risk of serious harm and that defendants

had exhibited deliberate indifference to that risk.  <u>Murray</u>, 668 F. Supp. 2d at 357.

Accordingly, defendants' motion on this ground should be granted.


### C.  Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . .

deprive any person of life, liberty, or property without due process of law."  U.S. CONST.

amend. XIV § 1.  It is important to emphasize that due process "does not protect against all

deprivations of liberty.  It protects only against deprivations of liberty accomplished without

due process of the law."  <u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979) (internal quotation

and citations omitted).  "A liberty interest may arise from the Constitution itself, . . . or it may

arise from an expectation or interest created by state laws or policies."  <u>Wilkinson v. Austin</u>,

545 U.S. 209, 221 (2005) (citations omitted).  An inmate retains a protected liberty interest

to remain free from segregated confinement if the prisoner can satisfy the standard set forth

in <u>Sandin v. Conner</u>, 515 U.S. 472, 483–84 (1995).  Defendants do not address in their

motion whether Gillard has pleaded allegations sufficient to implicate a liberty interest.  For

this motion only, the Court assumes that Gillard has established a liberty interest for

purposes of his Fourteenth Amendment claims.

### 1. Mishandled Grievances

"Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment."  Torres v. Mazzuca, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (collecting cases) (concluding that failure to properly address grievances by conducting a thorough investigation does not create an actionable claim).  Further, "the breadth of any investigation remains in the discretion of the officers conducting the investigation."  Id.  Here, Gillard contends that defendant Rock violated his due process rights by denying his grievances without reviewing all available facts.  However, "[i]nmates do not have a constitutional right to have grievances processed or to ensure that grievances are processed properly."  Farid v. Demars, No. 06-CV-1545 (TJM/GJD), 2009 WL 455450, at *6 (N.D.N.Y. Feb. 23, 2009) (Dkt. No. 104-7) (citing Torres, 246 F. Supp. 2d at 342).  Thus, to the extent that Gillard is dissatisfied with how Rock handled his grievances, such a claim does not amount to a constitutional violation and must be dismissed.

Accordingly, defendants' motion on this ground should be granted.

### 2. IPC Recommendation

"[T]he mere preparation of an administrative segregation recommendation is not a basis for a § 1983 claim; rather, a prisoner's due process rights remain intact so long as he has an opportunity to rebut the charges against him at a hearing."  Phillips v. Roy, No. 08-CV-878 (FJS/ATB), 2011 WL 3847265, at *3 (N.D.N.Y. Aug. 29, 2011) (Dkt. No. 104-2) (citing Edmonson v. Coughlin, 21 F. Supp. 2d 242, 254–55 (W.D.N.Y. 1998)) (internal quotation marks and altercations omitted).  Here, Gillard alleges that Williams violated his

constitutional rights by issuing an IPC recommendation for him. Such a claim in itself is not actionable. "What is of constitutional importance, however, is the manner in which the IPC hearing is conducted." <u>Green v. Bauvi</u>, 792 F. Supp. 928, 937 (S.D.N.Y. 1992) (citing <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986)). As such, Gillard cannot maintain a due process claim against Williams based on the mere recommendation of IPC placement.

Accordingly, defendants' motion on this ground should be granted.

### 3. IPC Hearing

While inmates are not given "the full panoply of [due process] rights," they are still afforded procedural process. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). A prisoner is "entitled to advance written notice . . . ; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition including the evidence relied upon and the reasons for the disciplinary actions taken." <u>Sira v. Morton</u>, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted).

### a. Opportunity to Call Witnesses, Present Documentary Evidence, and Hearing Participation

Although inartfully asserted, Gillard contends that defendants Lafountain and Zarnetski denied Gillard the right to participate in the IPC hearing, which in turn denied Gillard the opportunity to call witnesses and present documentary evidence. Defendants argue that Gillard's due process rights were not violated because the IPC hearing resumed on another day.

Courts in this Circuit have differed on "whether an inmate has a due process right to be present at a disciplinary proceeding separate and apart from the well-established rights of inmates to call witnesses and present documentary evidence." Vogelfang v. Capra, 889 F. Supp. 2d 489, 513–15 (S.D.N.Y. 2010) (collecting cases). "It is well settled that an official may refuse to call witnesses as long as the refusal is justifiable [such as] . . . on the basis of irrelevance or lack of necessity." Scott v. Kelly, 962 F.2d 145, 146–47 (2d Cir. 1992) (internal quotation marks and citations omitted); see also Richardson v. Van Dusen, 833 F. Supp. 146, 152 (N.D.N.Y. 1993). Further, "[w]hile inmates do have the right to question witnesses at their disciplinary hearings, that right is not unlimited and its contours are under the discretion of prison officials." Rivera v. Wohlrab, 232 F. Supp. 2d 117, 125 (S.D.N.Y. 2002).

In this case, irrespective of whether Gillard has an independent due process right to be present at his IPC hearing, and accepting all allegations as true, it appears that defendants Lafountain and Zarnetski denied Gillard the opportunity to call witnesses and present documentary evidence by virtue of Gillard's absence at the portion of the IPC hearing presided over by Zarnetski. Sira, 380 F.3d at 69. Lafountain directly advised Gillard that Gillard was to waive his hearing rights. Gillard replied that he does not waive such rights. Zarnetski permitted such waiver without obtaining a signed waiver form. While defendants may have had good reasons for that denial, at this stage of the litigation, there is no record evidence upon which the Court may rely on to make an assessment. Therefore, Gillard has alleged a plausible Fourteenth Amendment claim against Lafountain and Zarnetski based on the denial of being afforded an opportunity to call witnesses and present documentary evidence. Iqbal, 556 U.S. at 678.

Accordingly, defendants' motion on this ground should be denied.

### b. Fair and Impartial Hearing Officer

Prisoners have a constitutional right to a fair and impartial hearing officer. See, e.g., Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004). However, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges . . . [as i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996) (citations omitted). "Claims of hearing officer bias are common in § 1983 cases by inmate plaintiffs, and where they are based on purely conclusory allegations, they are routinely dismissed." Washington v. Afify, No. 11-CV-6176L, 2013 WL 4718693, at *8 (W.D.N.Y. Sept. 3, 2013) (citing inter alia Vogel v. New York State Dep't of Corr., No. 10-CV-3827, 2010 WL 3895493, at *1 (S.D.N.Y. Oct. 4, 2010)).

Here, even viewing the allegations in the light most favorable to the plaintiff, Gillard has failed to allege a due process claim based on the denial of a fair and impartial hearing officer. Gillard contends that defendant Zarnetski failed to act as an impartial hearing officer and "staged" the IPC hearing. However, beyond the conclusory allegation of bias, Gillard fails to plead any specific facts to suggest to Zarnetski either staged the IPC hearing or was predisposed in imposing on Gillard the "maximum sanctions allowed." Compl. ¶ 46. Gillard does not proffer any facts showing how Zarnetski was a biased hearing officer. Cf. Washington, 2013 WL 4718693, at *9 (finding plaintiff alleged a plausible due process claim when hearing officer called plaintiff a "monkey"). While Gillard asserts Zarnetski failed to confirm that Gillard had signed a hearing waiver form, that fact, as discussed

21

supra, goes to Gillard's right to call witnesses and present a defense. As such, Gillard has failed to allege a plausible due process claim based on the denial of an impartial hearing officer.

Accordingly, defendants' motion on this ground should be granted.


### 4. False Allegations

An inmate has a right not to be deprived of a liberty interest without due process. However, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). Further, an inmate does not have a constitutional right to be free from false testimony by correction staff at prison disciplinary hearings. Collins v. Ferguson, 804 F. Supp. 2d 134, 138–39 (W.D.N.Y. 2011) (citing inter alia Phillips v. Goord, No. 08-CV-0957, 2009 WL 909593, at *6 (W.D.N.Y. Apr. 1, 2009) ("a claim for the filing of a false report or of providing false testimony by a correctional officer witness at a disciplinary hearing, in and of itself, does not state a cognizable claim that plaintiff's due process rights were violated"). "There must be more, such as retaliation against the prisoner for exercising a constitutional right." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir.1997) (citing Franco v. Kelly, 854 F.2d 584, 588–90 (2d Cir. 1988)).

Gillard contends that defendants Besson, Deluca, Hendry, and Williams either made false accusations or falsely testified against him for purposes of the IPC hearing. Gillard alleges that these defendants acted in such a manner in retaliation for Gillard lodging grievances and complaints. Boddie, 105 F.3d at 862; Dkt. No. 114 ¶ 12.

22

To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that: (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. <u>Gill v. Pidlypchak</u>, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted); <u>Tafari v. McCarthy</u>, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010). In the prison context, "adverse action" is objectively defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." <u>Davis v. Goord</u>, 320 F.3d 346, 353 (2d Cir. 2003). "[A]dverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone." <u>Jackson v. Onondaga Cnty.</u>, 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008).

"Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." <u>Barclay v. New York</u>, 477 F. Supp. 2d 546, 588 (N.D.N.Y. 2007) (citations omitted).

> There is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, so courts judge the permissible inferences that can be drawn from temporal proximity in the context of particular cases. However, courts have found that six and eight month gaps between the protected conduct and adverse action were sufficient, while in other circumstances three months was considered too long.

<u>Burton v. Lynch</u>, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

Courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration.  Jackson, 549 F. Supp. 2d at 214–15.  Therefore, conclusory allegations alone are insufficient.  Id. at 214 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery."))  If the plaintiff establishes these elements, the burden shifts to the defendants to show by a preponderance of the evidence that they would have taken the same action against the plaintiff absent his exercising of the protected conduct.  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

Here, Gillard has failed to allege plausible Fourteenth Amendment claims based on the making of false allegations against him.  Because the filing of prison grievances is a constitutionally protected activity, Gillard meets the first prong of the test.  Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996); Mateo v. Fischer, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010).  Further, it appears that the IPC hearing resulted in either Gillard's placement in IPC or keeplock, which would deter a similarly situated individual of ordinary firmness from exercising filing grievances.  Davis, 320 F.3d at 353.  However, Gillard does not proffer any allegations plausibly showing a causal connection between the protected conduct and the adverse action.  Gillard does not make any factual allegations as to when he filed grievances against defendants Besson, Deluca, Hendry, and Williams, his prior prison disciplinary history, any disciplinary hearing findings in his favor, or statements made by defendants as to their motives behind making the false accusations.  In fact, aside from conclusory statements, Gillard proffers no more factual allegations to support these claims.  Thus, given that Gillard has failed to allege a retaliation claim against Besson, Deluca,

24

Hendry, and Williams, he has failed to allege a plausible due process claim based on false allegations and testimony made by the defendants.

Accordingly, defendants' motion on this ground should be granted.

### 5. Polygraph Examination

An inmate is entitled to only certain procedural process for a disciplinary hearing. As discussed, such process includes providing a prisoner with advance written notice, a reasonable opportunity to call witnesses and present documentary evidence, a fair and impartial hearing officer, and a written statement of the disposition. Sira, 380 F.3d at 69. An inmate does not have the right to counsel or confrontation at prison disciplinary hearings. Id. (citing Wolff, 418 U.S. at 556). Here, Gillard's Fourteenth Amendment claim against Ramey must be dismissed as a matter of law. Gillard contends that defendant Ramey violated his due process rights by denying his request to administer a polygraph examination to Williams. However, an inmate does not have the right to confront his accuser. Sira, 380 F.3d at 69; Wolff, 418 U.S. at 556. It follows that Gillard lacks a constitutional right to request Williams be given a polygraph examination as a means to confront Williams's allegations against him. Hester v. McBride, 966 F. Supp. 765, 773 (N.D. Ind. 1997) ("Although polygraph tests are admissible in disciplinary proceedings, an inmate does not have a constitutional right to utilize or request that a witness in a disciplinary hearing be given a polygraph examination." (collecting cases)). Thus, Gillard has failed to state a plausible Fourteenth Amendment claim against Ramey. Iqbal, 556 U.S. at 678.

Accordingly, defendants' motion on this ground should be granted.

## III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for judgment on the pleadings (Dkt. No. 104) is **GRANTED** as to all claims and defendants except for the due process claims as set forth herein against defendants Lafountain and Zarnetski.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: March 31, 2014
      Albany, New York

                                      Christian F. Hummel
                                      U.S. Magistrate Judge